IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| D.M. JOHNSON FAMILT TRUST, ET AL., Plaintiff, vs. COUNTRYWIDE HOME LOANS, INC. ET AL., Defendant. | MEMORANDUM DECISION AND ORDER Case No.  2:09-cv-00317DAK |

This matter comes before the court on Countrywide Home Loans, Inc. and Countrywide Bank NA's (collectively " the Countrywide Defendants") Motion to Dismiss the claims of the D.M. Johnson Family Trust, D.M. Johnson and Associates, LLC, DaNell Johnson and Jamis Johnson, (collectively "Plaintiffs") against them for failure to state a claim upon which relief can be granted. The court held a hearing on the Countrywide Defendants' Motion to Dismiss on October 7, 2009. At the hearing, Plaintiff Jamis Johnson appeared *pro se* and all other Plaintiffs were represented by Joseph R. Goodman, and the Countrywide Defendants were represented by Philip D. Dracht. The court took the matter under advisement.  Having heard arguments, fully considered the motion and memoranda submitted by the parties and the facts and law relevant to the motion, the court GRANTS Defendant's Motion to Dismiss and enters the following Order.

**BACKGROUND**

This case arises from a "straw purchaser" scheme that went awry. Plaintiffs, a group of parties involving the Johnson family, are the original owners of the property in question—a single-family home in Salt Lake City ("Property"). In 2005, Plaintiffs transferred title to their family home to an LLC. The LLC is unidentified in the Complaint, and identified as Lawrence Skinner Associates, LLC ("LSA"), in the Countrywide Defendants' motion. The precise purpose of the transfer is not clear. For simplicity, this entity will be referred to as LSA. While LSA held title to the Property, the mortgage loan encumbering the property went into default despite attempts to refinance.

In an effort to avoid foreclosure, Plaintiffs and/or LSA identified "straw purchasers" in the persons of Rodney and Marianne Flahaut ("the Flahauts"). Plaintiffs entered into an agreement with LSA/Flahauts wherein the Flahauts assumed title to the Property and agreed to obtain separate, independent financing for a period of between ten and eighteen months. Further, pursuant to the agreement, either LSA or Plaintiffs, but not the Flahauts, would be responsible for making payments on the Flahauts' loans.

The Flahauts were successful in getting the financing in the amount of $1,900,000 from the Countrywide Defendants in the form of two loans, which were secured by the Property. Both loans closed in April 2006 and went into default in January 2007 because LSA ceased making the required payments. At all times the Johnson family occupied and continued to live in the Property.

Plaintiffs contend that transfer of title to the Flahauts was a stopgap measure to allow them to obtain suitable financing themselves and re-take title to the Property when their alternative financing came through. For their participation in this scheme, the

Flahauts received a fee of $50,000. Plaintiffs were not party to the loans and the Countrywide Defendants make an undisputed claim that they did not know of Plaintiffs' existence at the time the loans were made.

The allegations in the Complaint are extensive and involve multiple causes of action against these and other defendants. Twelve causes of action are alleged in total and five are directed towards the Countrywide Defendants: fraud, conspiracy to defraud, negligence, violation of the Truth in Lending Act (TILA) and the Home Equity Protection Acts (HOEPA), and a request for injunctive relief.

The claims of fraud and conspiracy to defraud center on Plaintiffs' allegations that the Countrywide Defendants made loans, not only to the Flahauts but as a widespread practice, they knew the borrowers would not be able to repay. Plaintiffs allege that it was necessary for the Countrywide Defendants to engage in this practice in order to inflate the value of their loan portfolios and subsequently facilitate the sale of mortgage-backed securities in the financial marketplace. In furtherance of this practice, Plaintiffs allege that the Countrywide Defendants made no effort to determine the Flahauts', or other borrowers', ability to pay back loans they made. Further, Plaintiffs allege the Countrywide Defendants instructed their employees to ignore their due diligence responsibilities and accept fabricated verifications of borrowers' employment and creditworthiness.

Plaintiffs' allegations of negligence cover much of the same ground as their fraud claims. The Complaint further alleges that the Countrywide Defendants were negligent in failing to verify zoning and title issues concerning the Property.

The alleged violations of TILA and HOEPA rest on the Countrywide Defendants' failure to provide all the required disclosures to the borrowers. Additionally, Plaintiffs allege that the Countrywide Defendants made payments either directly or indirectly to their agents that were not disclosed to the borrowers when the loans closed.

The causes of action seeking injunctive relief use the previous allegations as their foundation. Additionally, Plaintiffs contend that a trustee foreclosure sale should not be allowed to take place because Countrywide Home Loans, Inc. is not a proper beneficiary of the trust deed.

## ANALYSIS

The Countrywide Defendants argue four bases on which the claims against them should be dismissed: (a) Plaintiffs' lack of standing; (b) the Complaint's failure to meet the pleading standards of Rules 8 and 9 of the Federal Rules of Civil Procedure; (c) Plaintiffs' failure to plead the required elements of their claims; and (d) the frivolous nature of the Complaint. The court finds the causes of action against the Countrywide Defendants should be dismissed for two of these reasons: Plaintiffs do not have standing, and the allegations in the Complaint do not meet pleading standards. In ruling on a motion to dismiss, the court applies the standard that all well-pleaded allegations are accepted as true and construed in the light most favorable to the plaintiffs. *See Dias v. City of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

**a.    Standing**

Citing the well-established standard in *Lujan v. Defenders of Wildlife*, the Countrywide Defendants dispute the existence of all three elements of standing — injury, causation and redressability. *See* 504 U.S. 555, 560 (1992). First, the Countrywide

Defendants argue that not being party to the mortgages in question, Plaintiffs have sustained no injury in fact. With no legally protectable interests in the property (as neither title-holder of record nor party to the mortgages), they argue Plaintiffs can sustain no injury regardless of what happens vis-à-vis the mortgages in question.

In response, Plaintiffs claim they have standing because they are third-party beneficiaries to the mortgages. They assert that, but for their interim financing agreement with the Flauhauts, the Flauhauts would not have obtained the loans from the Countrywide Defendants. Plaintiffs go on to assert that the intent of the parties to the loans (the Flahauts and the Countrywide Defendants) that Plaintiffs be third-party beneficiaries may be proven by extrinsic evidence surrounding the circumstances of the execution of the loan agreements. *See Hansen v. Ford Motor Co.*, 900 P.2d 952, 954 (N.M. 1995).

Generally, third-party beneficiaries to any contract fall into one of two categories; intended beneficiaries and incidental beneficiaries. Given the prevailing intent standards for the first category, it seems clear that Plaintiffs do not fall into that group. *See United States v. United Services Auto. Ass'n*, 968 F.2d 1000, 1001–02 (10th Cir. 1992) (noting that the intent to benefit the third party must be clearly expressed in the contract); *see also Fleet Mortgage Corp. v. Schuster*, 811 P.2d 81, 82–83 (N.M. 1991).

In this case, the Countrywide Defendants neither knew of the existence of the Plaintiffs nor had any intention that they be beneficiaries of the loan agreements with the Flahauts. Further, even if the court accepts that the Flahauts intended Plaintiffs to be beneficiaries to the mortgage agreements (and there is no factual support for allegations that they did), neither loan agreement expressly stated that intention. There is no factual

5

support for Plaintiffs' argument that circumstantial evidence of intent is present. The circumstances of the execution of the loan agreements are such that there can have been no meeting of the minds between the Countrywide Defendants and the Flahauts on the question of intent to make Plaintiffs third-party beneficiaries to the mortgages. The Complaint alleges neither direct nor circumstantial evidence of an intent to make Plaintiffs third-party beneficiaries.

This puts Plaintiffs in the position of being at best incidental beneficiaries. It is well established that "an incidental beneficiary acquires no right either against the promisor or the promisee by virtue of the promise." Williston on Contracts § 37:19 (citing Second, Sixth, Seventh and Ninth Circuit precedent). Thus, Plaintiffs have no basis on which to claim an interest in the mortgages in question.

With respect to the specific elements of standing, the court also finds that the existence of the loans from the Countrywide Defendants to the Flahauts benefited the Plaintiffs rather than caused any injury. The purpose of the transfer of title to the Flahauts was to enable the Flahauts to obtain financing that would prevent foreclosure. Plaintiffs' strategy to retain their home could not have had any chance of succeeding absent the Flahauts' ability to secure alternative financing. For Plaintiffs to now claim injury arising from the existence of these loans is unreasonable. On the one hand, Plaintiffs claim to be third-party beneficiaries to the loans because the Flahauts took out the loans for their (Plaintiffs') benefit and yet, in the same Complaint, Plaintiffs allege that the Countrywide Defendants' loans to the Flahauts injured them. Plaintiffs cannot have it both ways.

Second, the court finds there was no causal nexus between the Countrywide Defendants' actions in providing this financing and any subsequent difficulties Plaintiffs

encountered. It was LSA's failure to make the payments on the mortgages in question that led to the possibility of a short sale of the Property by the Countrywide Defendants. Plaintiffs willingly entered into an agreement with LSA whereby LSA assumed title to the property immediately prior to title being transferred to the Flahauts. Said agreement either expressly or implicitly, by Plaintiffs' own admission, commits LSA or Plaintiffs to make payments on the mortgages. Nothing the Countrywide Defendants did or failed to do has any bearing on Plaintiffs'/LSA's failure to make payments on the loans.

Third, the court finds that Plaintiffs' injury cannot be redressed by the relief sought. Rescission of the notes and voiding the trust deeds, as has been requested by Plaintiffs, will do nothing to improve their situation. Plaintiffs are not the title holders of record for the property and are not even the most recent prior title holders. Thus, any change in the contractual relationship between the Countrywide Defendants and the Flahauts will have no legal effect on Plaintiffs.

Accordingly, the court concludes that Plaintiffs lack standing to bring the asserted claims against the Countrywide Defendants. On this basis, the court grants the Countrywide Defendants' Motion to Dismiss.

**b.     Pleading Standards**

While the court has concluded that Plaintiffs' lack of standing bars their claims against the Countrywide Defendants, Plaintiffs' claims also fail to meet the pleading standards under Rules 8 and 9 of the Federal Rules of Civil Procedure.

**1. Fraud**

The Countrywide Defendants take issue with Plaintiffs' fraud claims on two levels. They assert Plaintiffs' allegations: (1) do not meet the substantive requirements of

a fraud claim under Utah law; and (2) are not pled with the requisite particularity under the Federal Rules of Civil Procedure.

First, citing a standard laid down by the Utah Supreme Court, the Countrywide Defendants argue that Plaintiffs have failed to allege facts that would tend to prove any of nine elements of a fraud claim.[1] Plaintiffs allegations in support of their fraud and conspiracy claims are that the Countrywide Defendants inflated the value of the loans to the Flahauts, did not conduct due diligence in determining whether the Flahauts could pay the loans back, and instructed their employees to turn a blind eye to this unwarranted behavior. The Countrywide Defendants did this allegedly for the purpose of increasing their loan portfolio value to facilitate marketing mortgage-backed securities in the financial marketplace.

Even if all this is true, it does not constitute the perpetration of fraud on the Plaintiffs under the Utah standard enunciated in *Daines*. 2008 UT 51, ¶ 38. Plaintiffs do not allege that the Countrywide Defendants misrepresented a material fact to them or anyone else. In addition, Plaintiffs provide no factual support demonstrating that they detrimentally relied on a misrepresentation.

Second, the pleading rules also require that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.

---

[1]To succeed on a claim of fraudulent inducement under Utah law, a party must show by clear and convincing evidence (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to the party's injury and damage. *See Daines v. Vincent*, 2008 UT 51, ¶ 38, 190 P.3d 1269.

Civ. P. R. 9(b). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based . . . Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992) (quoting Ross v. Bolton, 904 F.2d 819 (2d Cir. 1990)). Thus, when Rule 9(b) applies, the plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made.

Plaintiffs' Complaint provides no such particulars and does not provide adequate notice to the Countrywide Defendants of the claims against them. Further, amendment of the Complaint to rectify these deficiencies is not possible. No misrepresentation of a material fact to the Plaintiffs by the Countrywide Defendants ever occurred. Plaintiffs never relied to their detriment on a misrepresentation by the Countywide Defendants. Thus, no amended Complaint can meet the pleading standards of Rule 9.

Finally, the Countrywide Defendants contend that a claim of conspiracy to commit fraud must fail when there is no viable claim for underlying fraud. *See Gildea v. Guardian Title Co. of Utah*, 970 P.2d 1265, 1271 (Utah 1998). The court concludes that in this case Plaintiffs have failed to state a viable claim of fraud and, consequently, the conspiracy to defraud claim must fail.

### 2. Negligence

The Countrywide Defendants argue that three of the four required elements of a negligence claim are missing. Most telling, they assert, is the absence of a duty of care between the Countrywide Defendants and Plaintiffs. Additionally, they point out that causation and damages have not been alleged.

Plaintiffs attempt to create a duty of care between the Countrywide Defendants and Plaintiffs by characterizing themselves as undisclosed vested third-party beneficiaries to the loan agreements. For the same reasons that the third-party beneficiary argument fails to establish standing, it also fails to establish a duty of care relationship between the Countrywide Defendants and Plaintiffs. Conveying an interest to a third-party beneficiary by contract must be done intentionally and expressly in the terms of the contract. Neither of these requirements was met in this case and Plaintiffs are therefore not third-party beneficiaries to the loan agreements. Absent the relationship that allegedly creates the duty, no duty of care on the part of the Countrywide Defendants with respect to Plaintiffs was created. Without an existing duty, the court does need to reach the elements of breach, causation or damages and concludes that Plaintiffs have failed to state a viable negligence claim.

### 3. Violations of TILA and HOEPA

The third claim against the Countrywide Defendants alleges violations of TILA, and includes violations of HOEPA. The claim asserts that the Countrywide Defendants failed to provide mandatory disclosures required by TILA. The Countrywide Defendants counter that the disclosures are required to be made only to the borrower. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); 15 U.S.C. § 1631 ("a creditor or lessor shall disclose *to the person who is obligated* on a consumer lease or a consumer credit transaction the information required under this subchapter.") (emphasis added).

In the Complaint, Plaintiffs concede that "[Jamis Johnson] viewed the Flahauts executing closing documents though he did not observe or know of the contents thereof [sic]; and neither he nor Johnson Plaintiffs executed any documents for closing." Compl. ¶ 33.

There are no other allegations that either of the other complaining parties had any knowledge of the content of the closing documents. If Plaintiffs did not and could not know what the substance of the closing documents was, they cannot have any basis on which to allege deficiencies in the disclosures such that TILA had been violated. Notwithstanding any of the above, Plaintiffs were neither parties to nor third-party beneficiaries of the mortgages and are thus not entitled to relief under TILA.

In reference to the HOEPA violation claims, the statutory requirements are not met by these loans. HOEPA applies if the interest rate of the loan exceeds a certain threshold, or if the total points and fees exceed eight percent of the loan. *See* 15 U.S.C. § 1602(aa) (1). No facts have been pled that would indicate that these loans meet either of these requirements. Further, claims under HOEPA have a two-year limitations period. *See* 12 U.S.C. § 4907(b). That two-year period commenced in April 2006 and expired in April 2008, well before these claims were filed. Accordingly, the court concludes that Plaintiffs have failed to state viable claims of TILA and HOEPA violations.

### 4. Injunctive Relief

Plaintiffs' fourth and fifth claims are requests for injunctive relief. The four factors that must be present in order for the court to grant injunctive relief are: (1) substantial likelihood that the moving party will eventually prevail on the merits; (2) a showing that the moving party will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the moving party outweighs what damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be

adverse to the public interest. *See Otero Sav. & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir. 1981).

Plaintiffs have not alleged facts that support any of these elements. Because Plaintiffs lack standing and each of their claims is fatally flawed in some way, they cannot meet the burden of establishing a likelihood of success on the merits.

In addition, the potential injury of Plaintiffs having to leave the Property they have been occupying (without having title to it) does not constitute irreparable harm. Plaintiffs are not the title holders of the property and the disposal of the Property does not affect their legal rights in any way. Even if the court accepted, for argument's sake, that Plaintiffs have a financial or legal interest in the Property, its disposition still does not constitute irreparable harm. In a recent decision on a request for injunctive relief to prevent a foreclosure sale of a residence, Judge Stewart noted, "the Court finds that sale of Plaintiffs' residence does not constitute irreparable harm. A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Holweg v. Accredited Home Lenders, Inc.*, 2009 WL 29703, *1 (D. Utah 2009) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001)). The Countrywide Defendants' trustee sale of the Property cannot be irreparable harm because Plaintiffs have no legal or financial interest in the Property and even if they did, a monetary remedy is readily ascertainable and would compensate them.

Absent a showing of a likelihood of success on the merits or a threat of irreparable harm, injunctive relief is inappropriate and a discussion of the balance of harms and policy considerations is unnecessary.

## CONCLUSION

Based on the above reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' claims against the Countrywide Defendants are dismissed with prejudice.

DATED this 27th day of October, 2009.

BY THE COURT:

DALE A. KIMBALL,
United Sates District Judge